IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

DONALD CHESTER,

        Plaintiff,

v.                                     CIVIL ACTION NO.  5:06-cv-00624

MICHAEL H. HOLLAND, et al.,

        Defendants.

**MEMORANDUM OPINION & ORDER**

Donald Chester ("Plaintiff") brings this action against the Trustees of the United Mine Workers of America 1974 Pension and Trust Plan ("Trustees" or "Defendants") challenging the denial of his application for disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1132 et seq.  Jurisdiction in present under 21 U.S.C. § 1331 and 29 U.S.C. § 1001 (2000) et seq.[1]

Both parties have moved for summary judgment [Docket Nos. 11and 13].  Plaintiff asserts that he is entitled to judgment as a matter of law because he satisfies each of the three eligibility requirements to receive disability benefits under the Plan.  Defendants counter that Plaintiff's medical records do not establish that his disability was caused by a mining accident, but rather a

---

[1] Section 502(e) of ERISA grants exclusive jurisdiction to the district courts to hear "civil actions under this subchapter brought by the Secretary [of Labor] or by a participant, beneficiary, [or] fiduciary." 29 U.S.C. § 1132(e)(1).  Similarly, § 502(a)(3) provides that a participant, beneficiary, or fiduciary has standing to enforce any ERISA provision.  § 1132 (a)(3)(iii).  The plaintiff is a plan beneficiary and thus has standing to seek enforcement of his alleged eligibility to receive disability benefits.

degenerative spinal condition, which the Plan's set of inquiries, called "Q & As", exclude as a compensable injury.

## I. FACTS

On April 21, 1998, while working as a shop mechanic for Essential Fuels, Inc., a signatory mine, Plaintiff injured his back while lifting a scoop tire. [Docket No. 9 at 71, 99].  Plaintiff continued to work after the incident, despite significant pain in his lower lumbar area [Docket No. 9 at 137].  The following morning, Plaintiff's pain grew worse and he sought medical attention at the Beckley Appalachian Regional Hospital emergency room.  Id.  Plaintiff was treated by a chiropractor and returned to work after about one week's time.  Id.

On July 25, 1998, Plaintiff injured his neck and right shoulder while installing a hydraulic pump [Docket No. 9 at 72].  Plaintiff sought treatment from Dr. Puranik, as reported by Dr. Prasadarao B. Mukkamala in a 1999 medical evaluation.  Plaintiff received x-rays which evidenced degenerative disc disease at the cervical spine [Docket No. 9 at 41].  In October 1998, Plaintiff was examined by Dr. A. E. Landis.  Dr. Landis reported no evidence of deformity at the lumbar spine. Dr. Landis also concluded that Plaintiff's x-rays revealed degenerative changes to the lumbar spine [Docket No. 9 at 42]. On December 22, 1999, Plaintiff was treated by Dr. Michael Kelly during an emergency room visit for back pain [Docket No. 9 at 152].  Dr. Kelly's clinical impression was that Plaintiff was suffering from degenerative disc disease.  Id.

Plaintiff was laid off on January 31, 2000 [Docket No. 9 at 98].  He sought further employment but was unsuccessful.  See id.  Plaintiff continued to seek medical treatment for his back pain for the next two years [See Docket No. 9 at 173, 209, 218].  Dr. Adnan Silk diagnosed

Plaintiff with cervical spondylosis and lumbar spondylosis on January 11, 2002 [Docket No. 9 at 219].

Plaintiff applied for social security disability benefits on September 15, 2000 [Docket No. 9 at 51]. His application was denied and that denial was affirmed on appeal. Id. Plaintiff reapplied for social security disability in November 2002, which was eventually approved on November 22, 2004 [Docket No. 9 at 48].

On April 24, 2005, Plaintiff filed for disability pension benefits with the UMWA Health and Retirement Funds. On January 20, 2006, the Trustees notified Plaintiff that his application was denied [Docket No. 9 at 13]. The Trustees found that Plaintiff's disabling condition was not the result of a mine accident, but due to a certain type of degenerative disc disease that was not compensable under the Plan [Docket No. 9 at 19-20]. On June 7, 2006, Plaintiff through his counsel submitted additional medical evidence for the Trustees' review [Docket No. 9 at 68]. Despite the submission of additional evidence, Plaintiff's application was denied. Plaintiff filed this law suit on August 11, 2006 contesting the Trustees' denial of disability benefits under the 1974 Pension and Trust Plan [Docket No. 1].

## II. STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When parties file cross-motions for summary judgment, the trial court must consider each motion separately and view the facts relevant to each in the light most favorable to the nonmoving party. Mellen v. Brunting,

327 F.3d 355, 363 (4th Cir. 2003). Each moving party bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## III. ANALYSIS

### A. Applicable Standard of Review - Denial of Benefits under ERISA

"It is well established that a court reviewing the denial of disability benefits under ERISA initially must decide whether a benefit plan's language grants the administrator or fiduciary discretion to determine the claimant's eligibility for benefits, and if so, whether the administrator acted within the scope of that discretion." Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 268 (4th Cir. 2002). "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion." Firestone Tire and Rubber Co. v. Burch, 489 U.S. 101, 111 (1989) (quoting Restatement (Second) of Trusts § 187 (1959)). The parties agree that the Plan contains discretionary language. See Hale v. Trs. of United Mine Workers of Am. Health & Ret. Funds, 23 F.3d 899, 901 (4th Cir. 1994) (Court of Appeals for the Fourth Circuit has consistently held that the language of the UMWA 1974 Pension Plan [the Plan involved here] expressly confers discretionary authority upon trustees).

"In cases in which the ERISA plan vests the plan administrator with discretionary authority to construe the terms of the plan, we review the administrator's benefits determinations for an abuse of that discretion." Evans v. Met. Life Ins. Co., 358 F.3d 307, 310 (4th Cir. 2004). According to this deferential standard, the trial court must not disturb the administrator's decision if it is reasonable, even if the Court would have come to a different conclusion independently. Booth v.

Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 341 (4th Cir. 2000). A plan administrator's determination is reasonable if it is the product of a deliberate and principled reasoning process and is supported by substantial evidence. Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997).

Even where a plan confers this discretion, however, the plan administrator is "not free to alter the terms of the plan or to construe unambiguous terms other than as written." Colucci v. Agfa Corp. Severance Pay Plan, 431 F.3d 170, 176 (4th Cir. 2005). If a denial of benefits is contrary to the clear terms of the plan, the plan administrator's determination "will constitute an abuse of discretion." Lockhart v. United Mine Workers of Am. 1974 Pension Trust, 5 F.3d 74, 78 (4th Cir. 1993). "[T]he dispositive principle remains . . . that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, 'courts may not replace [it] with an interpretation of their own.'" Hale, 23 F.3d at 900 (quoting De Nobel v. Vitro Group, 885 F.2d 1180, 1188 (4th Cir. 1989)). The Court's review of the Plan's decision to deny benefits is limited to the evidence contained in the administrative record. Id.

### B. Cross Motions for Summary Judgment

Defendants argue that its decision to deny benefits was not an abuse of discretion because Plaintiff's disabling condition is Spondylosis, a degenerative spinal condition, which Plaintiff has failed to link to a particular mining accident. [Docket No. 12 p. 18 ¶ 1]. The 1974 Plan states, in pertinent part:

> A Participant who (a) has at least 10 years of signatory service prior to retirement, and (b) becomes totally disabled as a result of a mine accident ... shall, upon retirement ... be eligible for a pension while so disabled. A Participant shall be considered to be totally disabled only if by reason of such

5

>accident such Participant is subsequently determined to be eligible for Social
>Security Disability Insurance Benefits . . . .

1974 Pension Plan, Art. II pt. C. [Docket 12, Ex. 4 p.6].  A plaintiff must establish three criteria to secure benefits:  1) he must be totally disabled, as evidenced by an SSDI award; 2) he must have been injured in a mine accident; and 3) he must demonstrate that his disability is a result of a mine accident.  See Harris v. Holland, 87 F. App'x 851, 857 (4th Cir. 2004).  Defendants concede the first two elements [Docket No. 12 p. 18 ¶ 1].  The Trustees contest the third element, however, and assert that Plaintiff's medical evidence does not establish a causal link between the two 1998 mine accidents and Plaintiff's Spondylosis.  Specifically, Defendants argue that the Plan excludes disability coverage for degenerative back conditions like Spondylosis.

In support of their position, the Trustees point to a set of inquiries, called "Q & As," which are used to promote consistency and uniformity when interpreting the terms of the 1974 Plan.  See McCoy v. Holland, 364 F.3d 166, 172 (4th Cir. 2004).  "The Trustees promulgate these Q & As pursuant to their authority under the Plan to issue rules and regulations implementing the Plan."  Id. "We afford the Trustees' interpretation of these rules the same deference that we give the Trustees' interpretation of the language of the Plan itself.  According to Q & A 252, miners who become disabled by progressive diseases or conditions such as black lung, silicosis, tuberculosis, arthritis, rheumatism, etc., cannot be considered disabled as the result of a mine accident."  Id.  "When a progressive disease combines with a mine accident to proximately cause a claimant's Qualifying Disability, however, the claimant is eligible for a disability pension."  Id.; See Richards v. United Mined Workers of Am. Heath a& Ret. Fund, 895 F.2d 133, 136-137 (4th Cir. 1990) (noting that Q

& A 252(k) requires benefits when a mine worker suffers a heart attack while pushing a heavy object in the normal course of his job).

The Trustees assert that Plaintiff's diagnosis of Spondylosis is precisely the type of degenerative back condition that Q&A 252 was intended to exclude as a compensable disability. In McCoy v. Holland, the Fourth Circuit discussed the application of Q&A 252 to certain forms of degenerative back and disc disease. The opinion noted the following:

> Degenerative disc disease is not a medical term of art. Instead, it is a convenient label . . . applied carelessly to a variety of distinct [degenerative] processes of spinal joints. Degenerative diseases of the spinal joints commonly result from structural changes in the vertebral bone and endplate, which occur with advancing age, [and] interfere with normal discal nutrition . . . . Another disease often described by the catch-all phrase degenerative disc disease is *spondylosis* deformans, which is typified by bone outgrowths, called osteophytes, along the vertebral column. *Spondylosis* deformans is extremely common with precipitously rising frequency ... with advancing age. It is generally ... accepted that *spondylosis* deformans is caused by repeated exposure to stress at the site of abnormalities in the peripheral fibers of the spinal column. Degenerative changes of the cervical spine are common after the age of 40 years and affect more than 70 percent of patients older than 70 years. Similarly, [d]egenerative changes in the lumbar spine ... [are] detected ... in 60 to 80 percent of men and women by the sixth decade of life, and in about 100 percent of subjects by the age of 70 years.

McCoy v. Holland, 364 F.3d at 168 n.3 (quoting 3 Donald Resnick M.D., Diagnosis of Bone & Joint Disorders 1372 (3d ed. 1995) (emphasis added) (internal citations and quotations omitted)). The Trustees argue that the medical evidence of record fails to demonstrate that the two 1998 mine accidents are causally connected to Plaintiff's later diagnosis of Spondylosis.

When determining whether a plaintiff's disability is caused by a mine accident, the Fourth Circuit has rejected the use of a strict causation standard. Specifically, "the proper analysis . . . is not whether the mine accident was the sole cause of the disability, or even the most significant cause

7

thereof, but whether the mine accident was a proximate cause of the disability." Harris, 87 F. App'x at 857 (quoting Robertson v. Connors, 848 F.2d 472, 475 (4th Cir. 1988)). As Judge Sprouse explained:

> The only reasonable interpretation of the requirement that total disability be 'the result of a mine accident,' therefore, is that it requires total disability to have been proximately caused by the mine accident. That is, if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job . . . then his total disability results from a mine accident.

Robertson, 848 F.2d at 475. The plaintiff bears the burden of demonstrating causation. Harris, 87 F. App'x at 857. Despite this burden, however, Plaintiff fails to identify any portion of the medical record that either contradicts the Trustees' findings or demonstrates that the Trustees' abused their discretion when they denied Plaintiff's application for benefits. See Evans, 358 F.3d at 310 (plaintiff must demonstrate abuse of discretion to overturn plan administrator's decision).

Plaintiff seeks to defeat the Trustees' motion by arguing that "there is no medical evidence to support the speculation . . . that the plaintiff was unaffected by his two mining accidents." [Docket No. 14 p.5 ¶ 1]. The causation standard under Robertson, however, requires more than Plaintiff's simple assertion that Plaintiff was indeed affected by the 1998 mining accidents. At minimum, the standard requires Plaintiff to point to record evidence that suggests that the 1998 mine accidents were linked to injuries that contributed to his Spondylosis. Instead, Plaintiff's motion remarks on the general inaccuracy of the Trustees' benefits decision without identifying any specific inaccuracy in the record. In addition, Plaintiff's motion attempts to place the burden of causation on the Trustees by arguing that the Trustees must prove that Plaintiff was unaffected by the mine accidents. This is an improper shift of an evidentiary burden that is not supported under the law of the Fourth

Circuit. Under the applicable discretionary standard, this Court cannot disturb the Trustees' decision if it is reasonable and supported by substantial evidence of record, even if it were to reach a different conclusion under de novo review. Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 341 (4th Cir. 2000). Accordingly, this Court cannot find that the Trustees' decision to deny benefits was arbitrary and capricious because Plaintiff has produced no evidence of record to suggest that the two mining accidents in 1998 caused Plaintiff's Spondylosis.

For the reasons stated herein, the Trustees' Motion for Summary Judgment is **GRANTED** [Docket No. 11] and Plaintiff's Motion for Summary Judgment is **DENIED** [Docket No. 13]. The Court further **DIRECTS** the Clerk to send a copy of this Order to all counsel of record and any unrepresented party, and to remove this action from the Court's active docket.

ENTER:   July 27, 2007

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE